FILED

April 14 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0726

DA 13-0726

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 101

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

KRISTOFFER BENJAMIN CARNES,

  Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 11-172
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

   Jennifer A. Hurley, Hurley Kujawa, PLLC, Butte, Montana

  For Appellee:

   Timothy C. Fox, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General, Helena, Montana

   Martin D. Lambert, Gallatin County Attorney; Erin Murphy, Deputy
County Attorney, Bozeman, Montana

Submitted on Briefs: February 4, 2015
Decided: April 14, 2015

Filed:

                 
_____
          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Kristoffer Benjamin Carnes appeals from the judgment entered by the Eighteenth Judicial Court, Gallatin County, finding him guilty of two counts of assault on a peace officer. We reverse, addressing the following issue:

¶2 *Did the District Court err by failing to instruct the jury that the State was required to prove mental state as to every element of the offense?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On July 18, 2011, Carnes was at home eating dinner with his girlfriend, Rose, and her family. After an argument, Carnes decided to leave and spend the night in a campground, and he began packing his things. While Carnes was outside the house, Gallatin County Sheriff's Deputies Dane Vranish and Dave Johnston responded to a domestic disturbance call placed from the residence. The deputies did not use emergency lights and, pursuant to standard procedures, parked their vehicle on the street and approached the house on foot with flashlights. They were dressed in uniforms. It was dark, but the deputies saw that lights on the house's interior and exterior were illuminated. The deputies observed several vehicles in the driveway. They saw Carnes walking and, without identifying themselves, asked him to step back from a flatbed truck parked perpendicular to the driveway, which was running. Carnes failed to comply with the commands and climbed inside the truck.

¶4 The deputies reached the driver's side of the truck. The driver's window was open, through which they asked Carnes to turn off the engine. Carnes failed to turn off the engine and exit the vehicle, prompting Deputy Johnston to pepper spray Carnes

2

through the window. Carnes began asking what he had done wrong, but still refused to turn off the engine in response to the officers' orders. When Deputy Johnston reached into the cab of the vehicle to remove Carnes' hand from the steering wheel, Carnes responded by saying "[d]on't do it . . . I'll f-ing run off with you b[itch]." Carnes accelerated the vehicle with Deputy Johnston's hand still inside, but quickly collided with an ornamental tree in the yard. Deputy Johnston was able to free himself from the vehicle before Carnes reversed and backed up toward the pavement. Deputy Johnston testified that the front end of the vehicle swept toward the deputies as it backed up, and that the deputies believed their lives were at risk. The truck then stalled. Both deputies engaged Carnes again, this time approaching from opposite sides of the vehicle. While Deputy Vranish approached from the driver's side, Deputy Johnston was able to reach inside the cab from the passenger side and pull the keys from the ignition.

¶5 Carnes was arrested and charged with two counts of Assault on a Peace Officer or Judicial Officer, in violation of § 45-5-210(1)(b), MCA. Carnes chose to represent himself at trial and was appointed stand-by counsel. On July 18, 2011, after a two-day trial, Carnes was found guilty of both counts and sentenced to 10 years in prison for each count, to be served concurrently. Further facts are discussed herein.

## STANDARDS OF REVIEW

¶6 This Court reviews for correctness the legal determinations a lower court makes when giving jury instructions, including whether the instructions, as a whole, fully and fairly instruct the jury on the applicable law. *Peterson v. St. Paul Fire & Marine Ins.*

3

*Co.*, 2010 MT 187, ¶ 45, 357 Mont. 293, 239 P.3d 904. District courts are given broad discretion when instructing a jury, and reversible error occurs only if the instructions prejudicially affect a defendant's substantial rights. *State v. Myran*, 2012 MT 252, ¶ 16, 366 Mont. 532, 289 P.3d 118. A district court's decision on jury instructions is presumed correct, and the appellant has the burden of showing lower court error. *In re M.J.W.*, 1998 MT 142, ¶ 18, 289 Mont. 232, 961 P.2d 105.

## DISCUSSION

¶7 *Did the District Court err by failing to instruct the jury that the State was required to prove mental state as to every element of the offense?*

¶8 Section 45-5-210(1)(b), MCA, provides that a person commits the offense of assault on a peace officer if he purposely or knowingly causes "reasonable apprehension of serious bodily injury to a peace officer . . . by use of a weapon." At trial, Carnes asserted he was not guilty because he did not know Deputies Johnston and Vranish were peace officers at the time of the offense. Carnes supported this assertion by arguing the officers had failed to use emergency lights when driving up to the area, approached the house on foot, and did not verbally identify themselves upon approach. Carnes further argued the deputies pointed flashlights at him, preventing identification. Finally, Carnes described a previous incident in which his girlfriend, following an argument, had called two male friends to the house to intimidate Carnes. Carnes asserted he had assumed the same two men had come to the house to threaten him on the night in question. Carnes suggested that he fully cooperated with the officers as soon as he understood he was not in danger.

4

¶9      Carnes challenges the jury instruction providing the elements of the crime, which was proposed by the State. The instruction stated, in pertinent part:

> To convict the Defendant, Kristoffer Benjamin Carnes, of the offense of assault on a peace officer . . . the State must prove the following: that the defendant knowingly or purposely caused a reasonable apprehension of serious bodily injury in [the deputy] by the use of a weapon; and that [the deputy] was a peace officer.

Carnes objected to the instruction, arguing the jury should not be instructed on the mental states of knowingly and purposely at all, because he was unaware the deputies were peace officers during the incident. The District Court overruled Carnes' objection and gave the instruction.

¶10     During deliberations, the jury sent out a note to the court, asking whether it was necessary to find that Carnes knew the deputies were peace officers at the time of the offense. The court declined to answer, instead referring the jury back to the instruction as given.

¶11     On appeal, Carnes argues the jury instruction relieved the State's burden to prove his awareness that the deputies were in fact peace officers. Carnes points to the model instruction for § 45-5-210(1)(b), MCA, which requires the State to prove the defendant acted purposely or knowingly with regard to all of the elements of the offense, including that the victim was a peace officer. He argues that "the jury is required to find the State proved more than just the victim was a peace officer; it must find the State proved the defendant was aware of that fact." Carnes argues that the given instruction's failure to require that the jury find he had acted purposely or knowingly with regard to the victim's

5

identity as a police officer violated his due process right under the United States and Montana Constitutions to have the State prove every element of the offense, citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970) ("the Due Process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); and *State v. Andress*, 2013 MT 12A, ¶ 23, 368 Mont. 248, 299 P.3d 316 (courts are required "to instruct the jury on the proper mental state element based upon the charged offense").

¶12    In response, the State argues Carnes failed to preserve the issue for appellate review, because his objection to the instruction was not specifically directed to the argument he now makes. Rather, Carnes' objection indicated the jury should not have been instructed on the pertinent mental states at all, because he "didn't really know what was going on at the time." The State concludes that, had Carnes believed purposely or knowingly applied to the "peace officer" element he should have moved for an appropriate instruction on those grounds and his failure to do so prevented the District Court from avoiding the alleged error.

¶13    It is a fundamental rule of appellate review that, with rare exception, we will not consider issues or claims not properly preserved for appeal. *State v. West*, 2008 MT 338, ¶¶ 16, 19-20, 346 Mont. 244, 194 P.3d 683. To properly preserve an issue or claim for appeal, it is necessary that the issue or claim be timely raised in the first instance in the trial court. *West*, ¶ 16. Carnes argues it would be an "unduly harsh" application of this rule to hold that Carnes waived the issue where he did lodge an objection to the

instruction, but that, alternatively, the issue warrants plain error review. In order to receive plain error review of an unpreserved issue, an appealing party must (1) demonstrate the claimed error implicates a fundamental right and (2) firmly convince this Court that failure to review would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial proceedings, or compromise the integrity of the judicial process. *State v. Norman*, 2010 MT 253, ¶ 17, 358 Mont. 252, 244 P.3d 737. Here, we conclude Carnes' claim of error implicates his right to due process of law, a fundamental constitutional right. Further, because of the jury's expressed concern about the necessity of finding that Carnes knew the victims were officers, we conclude that failure to review the claim will leave unsettled the fundamental fairness of the trial.

¶14 Jury instructions must fully and fairly instruct the jury on the applicable law. The instruction given to the jury was a misstatement of the law, as demonstrated by the statutory language describing the offense. To be found guilty of assaulting a police officer under § 45-5-210(1)(b), MCA, a defendant must purposely or knowingly cause bodily injury to a peace officer or judicial officer by use of a weapon. The statute provides that a person must act purposely or knowingly with respect to all elements of the offense, including the peace officer element. The given jury instruction required the jury to find the deputies were peace officers, but not that Carnes knew them to be peace officers.

¶15     This error clearly prejudiced Carnes. He made this very issue the central point of his defense. He offered evidence that he could not have known the deputies were peace officers, and argued he did not act knowingly. Carnes' objection to the instruction was misguided, but was premised on his lack of knowledge. The jury's question demonstrated confusion over the issue, but they were nonetheless directed back to the incorrect instruction, after which they found Carnes guilty.

¶16     Reversed and remanded for further proceedings consistent with this opinion.


/S/ JIM RICE

We concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA


Justice Laurie McKinnon, dissenting.

¶17     I dissent.

¶18     Preliminarily, the Court has chosen to review Carnes' claimed error under the plain error doctrine despite Carnes having never raised the doctrine in his opening brief. We have repeatedly said that we will not consider issues raised for the first time in an appellant's reply brief since to do so would unfairly "tilt the balance in a case in favor of the party who gets the final word in presenting its arguments to this Court." *State v. Sattler*, 1998 MT 57, ¶ 47, 288 Mont. 79, 956 P.2d 54; M. R. App. P. 12(3).

¶19     Secondly, there is no constitutional violation warranting plain error review where the language of the contested instructions mirrors the language of the statute and where the jury has been fully and fairly instructed on the applicable law of the case. *State v. Doyle*, 2007 MT 125, ¶ 67, 337 Mont. 308, P.3d 516; *State v. Dubois*, 2006 MT 89, ¶ 30, 332 Mont. 44, 134 P.3d 82. We review jury instructions in a criminal case to ascertain whether they fully and fairly instruct the jury on the law applicable to the case. Moreover, we have long recognized that a trial court has broad discretion when instructing a jury. *State v. Ditton*, 2006 MT 235, ¶ 18, 333 Mont. 483, 144 P.3d 783. Reversible error will occur only if the jury instruction prejudicially affects the defendant's substantial rights. *Doyle*, ¶ 66; *Dubois*, ¶ 30. Where the contested instruction nearly replicates the language of the statute, the jury has been properly informed as to the law. *Doyle*, ¶ 67. It is also not necessary that the instruction mirror exactly the language of the statute. *State v. Maloney*, 2003 MT 288, ¶ 27, 318 Mont. 66, 78 P.3d 1214. "While a defendant is entitled to have the jury instructed on her theory of the case, she is not entitled to an instruction concerning every nuance of her argument." *Maloney*, ¶ 27.

¶20     The State charged Carnes pursuant to § 45-5-210 (1), MCA, which provides:

> 45-5-210. Assault on peace officer or judicial officer.
> (1) A person commits the offense of assault on a peace officer or judicial officer if the person purposely or knowingly causes:
>
> .    .    .
>
> (b)  reasonable apprehension of serious bodily injury in a peace officer or judicial officer by use of a weapon.

Here, the District Court gave the following instruction as to the elements of the crime:

9

To convict the defendant, Kristoffer Benjamin Carnes, of the offense of assault on a peace officer under Count 1 and 2, the State must prove the following: that the defendant knowingly or purposely caused a reasonable apprehension of serious injury in Deputies Vranish and Johnston by use of a weapon; and that Deputies Vranish and Johnston were a peace officer.

¶21 In my opinion, this instruction reasonably, if not exactly, mirrors the language of the statute. It is plain, concise, and easy to understand. Furthermore, the District Court gave exactly the language of the Montana Criminal Jury Instruction 5-116 which provides:

Instruction No. 5-116
Assault on a Judicial Officer/Peace Officer.

A person commits the offense of assault on a judicial/peace officer if the person purposely or knowingly causes: . . . reasonable apprehension of serious bodily injury in a judicial officer/peace officer by use of a weapon.

¶22 I would not exercise plain error review when the District Court has (1) instructed the jury in accordance with statutory language, and (2) given the specific instruction embodied in the Montana Criminal Jury Instruction. The fact that the jury asked a question generated by Carnes' argument and theory of defense does not mean that the jury was improperly instructed or that the instruction failed to apprise the jury of the law.

¶23 While this Court ordinarily does not consider issues raised for the first time on appeal, we may review a claimed error under the plain error doctrine if the appellant shows that the alleged error implicates a fundamental right and the Court is firmly convinced that failure to review the claim would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial, or compromise the integrity of the judicial process. *State v. Norman*, 2010 MT 253, ¶ 17,

10

358 Mont. 252, 244 P.3d 737. This Court has repeatedly declined to exercise plain error review of mental state instructions, particularly where the instruction replicates the language of the statute and correctly states the law and properly informs the jury. *State v. Gunderson*, 2010 MT 166, ¶¶ 104-05, 357 Mont. 142, 237 P.3d 74; *State v. Earl*, 2003 MT 158, ¶¶ 21, 24-26, 316 Mont. 263, 71 P.3d 1201; *Doyle*, ¶ 67; *State v. Hudson*, 2005 MT 142, ¶ 21, 327 Mont. 286, 114 P.3d 210.

¶24   Finally, the evidence presented leaves little doubt that Carnes knew the victims were peace officers. Although Carnes admitted all of his conduct and raised justifiable use of force as an affirmative defense, he argues on appeal he was denied a fundamental right to have the jury instructed regarding the mental state for each element of the crime. I fail to see, in light of the evidence produced and the instruction given, how Carnes was denied a substantial right. While the jury asked a question, which undoubtedly has prompted examination of the instruction on appeal, the jury was never instructed that they did not have to find Carnes knew the victims were police officers. Carnes asserts his error in spite of evidence that Deputies Vranish and Johnston were both in uniform, that Carnes referred to them as "sir," and that Carnes repeatedly asked what he did wrong. Even assuming that the District Court improperly instructed the jury, I fail to see how, under these circumstances, Carnes suffered substantial prejudice.

¶25   I would not find that this jury instruction resulted in a manifest miscarriage of justice, left unsettled the fundamental fairness of the proceeding, or compromised the integrity of the judicial process. Nor do I believe it implicates a fundamental right of

Carnes.  It is my view that the jury was fully and fairly instructed as to the law of the case and that the judgment should be affirmed.

/S/ LAURIE McKINNON

Chief Justice Mike McGraths joins the dissent.

/S/ MIKE McGRATH